UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| HYE-YOUNG PARK a/k/a LISA PARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-02149-SLD-EIL |
| | ) | |
| ROBERT E. STAKE, MENAH PRATT-CLARKE, HEIDI JOHNSON, KAAMILYAH ABDULLAH-SPAN, MICHAL T. HUDSON, and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Plaintiff Hye-Young Park a/k/a Lisa Park's Motion to Alter or Amend the Judgment, ECF No. 15, motion to proceed on appeal in forma pauperis, ECF No. 17, and motion to become an electronic filer in the Seventh Circuit's electronic filing system, ECF No. 19. For the reasons that follow, the Motion to Alter or Amend the Judgment is DENIED, the motion to become an electronic filer is MOOT, and the Court reserves ruling on the motion to proceed on appeal in forma pauperis.

**BACKGROUND**

The allegations of Plaintiff's complaint and the procedural background of this case are discussed in the Court's order dismissing Plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B). *See* Order 2–4, ECF No. 13. The Court found that res judicata and collateral estoppel barred Plaintiff's claims because she had already filed lawsuits based on the same facts—harassment she suffered at the hands of Charles Secolsky, a researcher affiliated with the University of Illinois (the "University"), and Robert Stake, a University professor, and the University's

response to her complaints of harassment—so it dismissed her complaint as frivolous.  *See id.* at 8–9.  It also denied her leave to amend her complaint after finding that the proposed amended complaint would be futile and denied her leave to become an electronic filer.  *Id.* at 10.  Plaintiff moves to alter or amend this order, arguing that the Court committed manifest errors of fact and law and that altering the order is necessary to prevent manifest injustice.  Mot. Alter Amend J. 2–29.  She also argues the Court should have granted her leave to amend her complaint and allowed her to become an electronic filer.  *Id.* at 30–31.

## DISCUSSION

## I.  Motion to Alter or Amend Judgment

### a.  Legal Standard

Federal Rule of Civil Procedure 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures."  *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (quotation marks omitted).  A court should alter or amend its judgment under Rule 59(e) only if "the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact."  *Burritt v. Ditlefsen*, 807 F.3d 239, 252–53 (7th Cir. 2015) (quotation marks omitted).  "A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Id.* at 253 (quotation marks omitted).  Relief may be warranted when there is "an intervening change in controlling law" or "if necessary to prevent manifest injustice."  11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2810.1 (3d ed. 2021 Update).  A court may also reconsider its prior decision if it "misunderstands a party's arguments" or "overreaches by deciding an issue not properly before it."  *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).  But it is not appropriate, on a

2

motion for reconsideration, "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Miller*, 683 F.3d at 813 (quotation marks omitted).

### b. Analysis

#### i. Errors of Fact

Plaintiff first argues that the Court made various manifest errors of fact in its order dismissing her suit. Mot. Alter Amend J. 2–23. Many of her alleged errors of fact, however, relate to conclusions of law. For example, she argues the Court erred in concluding that the issues presented in this case were litigated in the 2015 case, *id.* at 3–4; that she could have brought her new claims in the 2015 case, *id.* at 4; that there was a judgment on the merits in the 2015 case, *id.* at 9; and that she was fully represented in that case, *id.* at 19. The Court will address those arguments later. The remainder of Plaintiff's arguments regarding the facts are mere quibbles with statements in the Court's order that would not change the outcome of the case. For example, she disputes that she did "not allege many facts to support her claims against" Defendants Kaamilyah Abdullah-Span and Menah Pratt-Clarke. *Id.* at 5 (emphasis omitted) (quoting Order 3 n.2). Plaintiff argues that she alleged more than enough facts "to reasonably infer that" Abdullah-Span and Pratt-Clarke "closely communicated with" the University officials handling Plaintiff's complaints. *Id.* But the Court ultimately concluded that Plaintiff was alleging that they "were involved with the [Office of Diversity, Equity, and Access] review," Order 3 n.2, which is what Plaintiff argues the Court should have concluded. She also argues that the Court's statement that she "readily admits" that "she has already filed three lawsuits against Defendants about these matters" is erroneous. Mot. Alter Amend J. 2 (quoting Order 3). She argues that "she does not readily admit that all her claims in the current case were

brought in her prior lawsuits." *Id.*  But that is not what the Court found.[1]  The Court merely noted that she had filed previous lawsuits based on Secolsky's and Stake's harassment, her reporting of said harassment, and the University's response thereto.  *See* Order 3.  Finally, Plaintiff argues that the Court inaccurately reported what occurred in one of the prior lawsuits, Mot. Alter Amend J. 7–8, and disagrees with how the Court characterized her objection to the Report and Recommendation, ECF No. 10, Mot. Alter Amend J. 8–9.  Neither argument convinces the Court it made a manifest error of fact.

### ii.  Errors of Law

The Court identified the correct requirements for res judicata and collateral estoppel, Order 5, and provides them again here for context.  Res judicata bars a subsequent lawsuit if there is "(1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action."  *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir. 2015).  Collateral estoppel "prevent[s] relitigation of issues resolved in an earlier suit."  *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).  Collateral estoppel applies when:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue [was] actually litigated in the prior litigation; (3) the determination of the issue [was] essential to the final judgment; and (4) the party against whom estoppel is invoked [was] fully represented in the prior action.

*Id.*

Plaintiff primarily argues that the judgment disposing of her claims against Stake, the Board, Hudson, and Johnson in the 2015 suit was not on the merits because it "was founded on

---

[1] Plaintiff quotes the Court's language—"As Plaintiff readily admits, she has already filed three lawsuits against Defendants about these matters," Order 3 (citation omitted)—but adds in brackets after that quote, presumably in an attempt to provide a definition of "these matters," "Plaintiff's current claims against Defendants." Mot. Alter Amend J. 2.  That addition does not accurately capture what the Court meant by "these matters."

non-factual statements," Mot. Alter Amend J. 9, 23–24, but res judicata applies "even if the

decision in the first [suit] was transparently erroneous," *Gleash v. Yuswak*, 308 F.3d 758, 760

(7th Cir. 2002) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)); *id.* ("In civil

litigation, the final resolution of one suit is conclusive in a successor, whether or not that

decision was correct."). The same is true of collateral estoppel. *See B&B Hardware, Inc. v.*

*Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) ("[I]ssue preclusion prevent[s] relitigation of

wrong decisions just as much as right ones." (second alteration in original) (quotation marks

omitted)).

Plaintiff also argues that she was not fully represented in the first suit because she was

not able to correct the allegedly non-factual statements, *see* Mot. Alter Amend J. 19–23, but this

is beside the point. The representation question in the collateral estoppel analysis refers to

whether a non-party's interests were represented in the first suit. *See United States ex rel.*

*Conner v. Mahajan*, 877 F.3d 264, 270 (7th Cir. 2017); *In re Spielman*, 588 B.R. 198, 205 (N.D.

Ill. 2018) ("Spielman misunderstands what it means to be 'fully represented' in the prior action.

This element of collateral estoppel comes into play when a party seeks to enforce a prior

judgment against a person who was not a party to the prior litigation." (citing *Taylor v. Sturgell*,

553 U.S. 880, 892 (2008))). Plaintiff was a party to all earlier suits.

Plaintiff's most promising arguments are about the differences between this suit and her

earlier suits. Plaintiff argues that her "new claims arose from new information revealed during

the 2015 [c]ase discovery." Mot. Alter Amend J. 3. With respect to her new claims against

Stake, the Board, Hudson, and Johnson, however, this is irrelevant. For res judicata, the relevant

question is whether there is an identity of causes of action, and "[t]wo causes of action are

identical if each claim is supported by the same factual allegations." *Mahajan*, 877 F.3d at 271;

*see Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)

("[W]hether an identity of the cause of action exists[ ]depends on whether the claims arise out of

the same set of operative facts or the same transaction." (quotation marks omitted)).  Here, the

claims relating to Stake's misconduct arise out of the same core set of facts: Stake's and

Secolsky's harassment, Plaintiff's reporting of said harassment, and actions that were allegedly

taken against Plaintiff because of said reporting.  Even though she asserts slightly different

claims and presses slightly different legal theories in this suit, the claims are barred by res

judicata because they involve the same parties and the same events.  *Cf. Barr*, 796 F.3d at 840

("[A] plaintiff cannot evade preclusion by identifying a slightly different cause of action with

one element different from those in the first, second, or third lawsuits between the same parties

arising from the same events." (quotation marks and alteration omitted)).

   Abdullah-Span and Pratt-Clarke, however, were not parties to the 2015 suit, and therefore

the Court addressed only whether collateral estoppel barred the claims against them.  Collateral

estoppel "is narrower" than res judicata; only issues that were actually litigated and essential to

judgment are barred under collateral estoppel.  *Matrix IV*, 649 F.3d at 547.  Two claims are

asserted against Abdullah-Span and Pratt-Clarke in both their individual and official capacities in

the current case: that they violated Plaintiff's substantive due process rights "by failing to carry

out their duty (turning a blind eye to the misconduct) after [Plaintiff's] complaints of Stake's

misconduct,"  Compl. 62, ECF No. 1; and that they discriminated against Plaintiff on the basis of

sex, race, and national origin by "allow[ing] Stake's sex discrimination by deliberately ignoring

[Plaintiff's] complaint about his sexual misconduct," in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, Compl. 63.  Plaintiff argues that these claims "are

related to Stake's retaliation which was unknown to [Plaintiff] in the 2015 [c]ase."  Mot. Alter

Amend J. 3–4; *see also id.* at 3 ("[Plaintiff] is also able to file additional claims against . . . Pratt-Clarke and Abdullah-Span for . . . their deliberate indifference to [Stake's misconduct] . . . ." (emphasis omitted)).  It is true the 2015 lawsuit focused primarily on the University and its officials' response to Secolsky's harassment and misconduct, not Stake's.  *See Park v. Secolsky*, 787 F. App'x 900, 903–05 (7th Cir. 2019).  Therefore, Plaintiff is likely correct that the 2015 case did not actually decide the issues involved in the claims against Pratt-Clarke and Abdullah-Span in the current case.

However, there are other reasons to dismiss Plaintiff's claims.  First, Pratt-Clarke and Abdullah-Span cannot be liable under Title VII.  Title VII prohibits *employers* from discriminating against individuals.  *See* 42 U.S.C. § 2000e-2(a).  An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks."  *Id.* § 2000e(b).  An individual supervisor does not fall under the statute's definition of employer.  *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); *Williams v. Banning*, 72 F.3d 552, 553–55 (7th Cir. 1995) (citing *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir. 1995) (holding that there is no individual liability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and noting that the ADA's definition of employer mirrors Title VII's definition)).  The Title VII claim against Pratt-Clarke and Abdullah-Span, therefore, must be dismissed because they cannot be sued in their individual capacities, *see Collins v. Illinois*, 125 F. App'x 723, 727 (7th Cir. 2005) ("Collins may not maintain a Title VII suit against her supervisors in their individual capacities."); *Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *10 (N.D. Ill. Dec. 10, 2018) ("Ross cannot assert a claim against Hyland in his individual capacity because a supervisor cannot be held individually liable for claims asserted

7

under Title VII, the [Age Discrimination in Employment Act], or the [Illinois Human Rights

Act].ˮ), and the claim against them in their official capacities "is actually . . . against the

government entity," *Levin v. Madigan*, 697 F. Supp. 2d 958, 973 (N.D. Ill. 2010) (citing

*Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)), and is "redundant" because Plaintiff named

the Board as a defendant for this claim as well, *see id.* at 973–74 (dismissing the plaintiff's Title

VII and Age Discrimination in Employment Act claims against Illinois Attorney General Lisa

Madigan in her official capacity because the plaintiff also named the Office of the Attorney

General as a defendant).

Next, Plaintiff fails to state a substantive due process claim.  She alleges that Abdullah-

Span and Pratt-Clarke "denied [Plaintiff's] due process by failing to carry out their duty (turning

a blind eye to the misconduct) after [her] complaints of Stake's misconduct."  Compl. 62.  The

legal theory of her claim is somewhat unclear.  Her entire suit focuses on the sexual harassment

she was subjected to, *see id.* at 1, and "sexual harassment claims brought under § 1983 are

traditionally analyzed in the context of the Equal Protection Clause," *Wilson v. Cook County*,

742 F.3d 775, 780 (7th Cir. 2014).  But Plaintiff identifies this as a substantive due process

claim.  *See* Compl. 62.  "[T]he substantive component of the Due Process Clause may also come

into play [in a sexual harassment suit] when a plaintiff alleges that her bodily integrity was

violated by a state actor."  *Wilson*, 742 F.3d at 780–81.

Whether brought as an equal protection or a true substantive due process claim, however,

Plaintiff fails to state a claim.[2]  A defendant is only liable under § 1983 if she "was personally

---

[2] To the extent she is bringing a true substantive due process claim, it clearly fails for an additional reason: the right
to bodily integrity "is infringed by a serious, as distinct from a nominal or trivial, battery."  *Alexander v. DeAngelo*,
329 F.3d 912, 916 (7th Cir. 2003).  An unconsented-to kiss is a battery, but—while completely inappropriate—not
sufficiently serious to violate Plaintiff's substantive due process rights.  *See Decker v. Tinnel*, No. 2:04-CV-227,
2005 WL 3501705, at *1–2, *8–9 (N.D. Ind. Dec. 20, 2005) (surveying case law addressing substantive due process
bodily integrity claims based on sexual contact and concluding that a police officer's conduct in attempting to kiss
the plaintiff two times—succeeding at least once in touching her lips for a second—forcing his hand between her

responsible for the deprivation of a constitutional right." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quotation marks omitted).  And here, Plaintiff is seeking to hold Abdullah-Span and Pratt-Clarke responsible for their actions in causing Stake's misconduct by alleging that they "turn[ed] a blind eye to [Stake's] misconduct[] after [Plaintiff's] complaints." Compl. 62; *see Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988) (holding that a supervisor who does not actually commit the constitutional violation can be liable for "know[ing] about . . . [mis]conduct and facilitat[ing] it, approv[ing] it, condon[ing] it, or turn[ing] a blind eye for fear of what they might see," or "in other words act[ing] either knowingly or with deliberate, reckless indifference").  But Plaintiff alleges that she did not inform University officials until June 26, 2014 of Stake's harassment or misconduct.  Compl. 30. (It is not clear when Abdullah-Span and Pratt-Clarke specifically became aware of the harassment).  And she does not allege that Stake assaulted or harassed her after that time.  *Cf. id.* at 22–30, 56.  The only allegations of conduct by Stake after June 2014 are that he "did not reply to any of her emails."  *Id.* at 29.  There are no alleged constitutional violations that either Abdullah-Span or Pratt-Clarke knew about that they condoned, facilitated, or approved of, and there is no allegation that they should have known yet turned a blind eye to any harassment.  *Cf. Park*, 787 F. App'x at 905 (noting in the appeal of the 2015 suit that state actors "can be liable only for their own misdeeds; they cannot be held vicariously liable for the acts of their subordinates" and affirming the district court's denial of Plaintiff's equal-protection harassment claims against Stake, Hudson, and Johnson based on Secolsky's harassment because she argued only that the officials "failed to prevent [Secolsky's] harassment and turned a blind eye to it").

---

thighs, and touching her breasts, while "improper and reprehensible" did "not rise to the level of a constitutional violation").

In sum, even if the Court were incorrect in finding that collateral estoppel barred Plaintiff's claims against Abdullah-Span or Pratt-Clarke, it would still dismiss them for failure to state a claim. Based on Plaintiff's history of attempting to bring claims based on these events, the Court believes any further amendment would be futile, so it would not grant her leave to amend.

### iii.   Manifest Injustice

Plaintiff's argument that the Court should grant her motion to prevent manifest injustice, Mot. Alter Amend J. 24–29, amounts to an argument that the Court should create an exception to the doctrine based on her circumstances. The Court cannot change the law to benefit Plaintiff.

### iv.   Other Issues

Plaintiff briefly argues that the Court should have granted her motion to amend her complaint because "permitting [her] Amended Complaint would not be futile if the Court grants Plaintiff's Complaint." *Id.* at 30. But the Court declines to disturb its dismissal of Plaintiff's complaint, so allowing an amended complaint asserting the same claims would be futile. Plaintiff also suggests the Court should have allowed her to become an electronic filer. *See id.* But this case is closed, so there is no reason to allow her to become an electronic filer.

## II.   Miscellaneous Motions

Plaintiff moves to proceed on appeal in forma pauperis. *See generally* Mot. Leave Appeal In Forma Pauperis. Pursuant to Federal Rule of Appellate Procedure 24(a)(3)(A), "[a] party who was permitted to proceed in forma pauperis in [a] district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless the district court . . . certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding."

*See also* 28 U.S.C. § 1915(a)(3) ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.").  "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."  *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000).

Here, the Court granted Plaintiff in forma pauperis status.  Order 9–10.  Therefore, she does not need further authorization from this Court to proceed on appeal in forma pauperis. However, the Court doubts that her appeal is taken in good faith.  Plaintiff's claims are based on the same core facts as were the basis of her earlier suits and are clearly barred under res judicata or are otherwise meritless, so her claims are frivolous.  A court that "doubts that [an appeal] is in good faith should, before yanking the appellant's [in forma pauperis] status, notify the appellant of the impending change of status and give h[er] an opportunity to submit a statement of h[er] grounds for appealing."  *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999).  Plaintiff may file a statement of her grounds for appeal within fourteen days.  She is hereby notified that if she fails to submit such a statement, the Court will deny her motion and certify that her appeal is not taken in good faith.

Plaintiff has also filed a motion to become an electronic filer in the Seventh Circuit.  *See* Mot. Becoming Electronic Filer 1.  As this motion is not addressed to this Court, it is MOOT.

## CONCLUSION

Accordingly, Plaintiff Hye-Young Park a/k/a Lisa Park's Motion to Alter or Amend the Judgment, ECF No. 15, is DENIED.  Her motion to become an electronic filer in the Seventh Circuit's electronic filing system, ECF No. 19, is MOOT.  The Court reserves ruling on the motion to proceed on appeal in forma pauperis, ECF No. 17.  Plaintiff may file a statement of her grounds for appeal within fourteen days.

11

Entered this 8th day of June, 2021.

_____
s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
